**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DOCTOR'S ASSOCIATES LLC and　　　：
SUBWAY® IP LLC　　　　　　　　　：
　　　　　　　　　　　　　　　　　： 　　CASE NO:　1:22-cv-7497
　　　　　Plaintiffs,　　　　　　　：
　　　　　　　　　　　　　　　　　：
v.　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　：
MINA HANNA and　　　　　　　　 ：
GEORGE HANNA　　　　　　　　　 ：
　　　　　　　　　　　　　　　　　：
　　　　　Defendants.　　　　　　 ：　　DECEMBER 9, 2022

## COMPLAINT

### NATURE OF THE ACTION

1.　　　Plaintiff Doctor's Associates LLC ("DAL") is the franchisor of Subway® sandwich shops in the United States. Its founder, Frederick DeLuca, started the first Subway® restaurant with the goal of providing healthy, affordable, and convenient food. Based on that vision, Subway® restaurants rapidly grew from a single location to an internationally recognized brand, with more than 37,000 Subway® locations operating in over 100 countries around the world.

2.　　　Plaintiff Subway® IP LLC ("SIP") owns the proprietary system (the "Subway® System") for establishing and operating restaurants that made this growth possible. SIP is also the owner of various intellectual property rights associated with the Subway® brand, including US and Canadian trademarks to both the Subway® name and its well-known logos. The reputation and goodwill attached to these trademarks are central to Plaintiffs' business.

3.　　　SIP licenses the Subway® System, including the famous Subway® trademarks and copyrights, to DAL.

4.　　　Defendants Mina Hanna and George Hanna ("Defendants") are former franchisees, who operated a Subway® restaurant located at 6313 18th Avenue, Brooklyn, NY 11204

1

("Restaurant #62918"). Defendants' operation of Restaurant #62918 was governed by a franchise agreement (together with an addendum to that franchise agreement) dated April 18, 2014 (collectively, the "Franchise Agreement").

5.    In 2020, Defendants George and Mina Hanna brought an arbitration, administered by the American Arbitration Association ("AAA") according to its Commercial Rules of Arbitration, against DAL alleging that DAL: (1) failed to allow him to build a Subway® Café style restaurant; (2) improperly required him to change the décor style of his restaurant after receiving approval from his landlord; (3) failed to pay him a $10,000 remodeling grant; and (4) unfairly evaluated his restaurant after it opened.

6.    The appointed arbitrator conducted five days of evidentiary hearings, concluding on October 22, 2021.

7.    The arbitrator issued a Final Award of Arbitration ("Award") on December 16, 2021, finding that Defendants had not proved any of their claims, except with regard to the $10,000 claim for a remodeling grant. However, the arbitrator determined that they should be awarded no money on that claim because they had engaged in self-help. Specifically, Mina Hanna had improperly and without DAL's permission or knowledge purchased hundreds of Keurig commercial coffee machines at discounted prices through the franchisee purchasing process and then resold those machines for a profit. His profits from that endeavor exceeded his claimed damages of $10,000.

8.    The Award was confirmed on April 25, 2022.

9.    In apparent retaliation for their defeat in the arbitration, Defendants began: (1) refusing inspections of Restaurant #62918; (2) refusing to pay royalties and advertising fees; and (3) refusing to make rent payments, all in violation of the Franchise Agreement.

10.     As such, DAL sent Defendants a Notice of Default on August 5, 2022 and two Notices of Default on August 8, 2022 to remedy their defaults or face termination.

11.     The time-period to cure having passed without change, DAL notified Defendants that their Franchise Agreement was terminated by Notice of Termination dated November 11, 2022.

12.     The Notice of Termination expressly provided:

> **Within one (1) week of receipt of this Notice, you must close and dis-identify your restaurant and comply with any other post termination obligations of your Franchise Agreement. Please refer to the termination provisions of your Franchise Agreement, including Paragraph 8.e through 8.i, for specific obligations you must fulfill upon termination. The failure to close and dis-identify your restaurant and comply with all other post termination provisions in the Franchise Agreement within the time period set forth in this paragraph will result in DAL taking legal action against you.**

13.     Despite DAL's termination of the Franchise Agreement, Defendants continue to operate a restaurant located at 6313 18th Avenue, Brooklyn, NY 11204.

14.     Upon information and belief, the premises is still identified as a Subway® restaurant in virtually all respects: multiple signs explicitly call the restaurant a Subway®; Subway® trademarks and colors abound; and the restaurant is offering what looks to the public like Subway® food that appears to be made using Subway®-approved product that Defendants do not have permission to use. In fact, it does not appear that Defendants have taken any steps to change the appearance or functioning of their restaurant since the termination of the Franchise Agreement.

15.     Defendants' continued operation of a Subway®-branded restaurant constitutes a violation of SIP's intellectual property rights and is in violation of multiple provisions of the Franchise Agreement that govern the parties' post-termination relationship. Plaintiffs thus seek an injunction to prevent Defendants from continuing to mislead Subway® customers and threaten

DAL and SIP's goodwill and reputation through wrongful and unauthorized use of Plaintiffs' valuable intellectual property. Plaintiffs also seek monetary damages related solely to Defendants' violation of their post-termination obligations.

## THE PARTIES

16.     Plaintiff DAL is a Florida limited liability company that is headquartered in Milford, Connecticut. All of the individuals and entities who have a direct or indirect ownership interest in DAL are the citizens of the following states: Connecticut, Florida, and Delaware.

17.     Plaintiff SIP, an affiliate of DAL, is a Delaware limited liability company with its principal place of business in Florida. All of the individuals and entities who have a direct or indirect ownership interest in DAL are the citizens of the following states: Connecticut, Florida, and Delaware.

18.     Defendants Mina and George Hanna are individual residents of New York.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and § 28 U.S.C. § 1338(a) because this action arises under federal law and relates to federally registered trademarks and copyrights.

20.     This Court also has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

21.     This Court has supplemental jurisdiction over the claims asserted in Counts Three through Eight below pursuant to 28 U.S.C. § 1367(a).

22.     This Court has personal jurisdiction over Defendants, as individual residents of New York. Furthermore, Defendants' infringement of property rights occurred (and is still occurring) in New York.

23.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. In the alternative, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

**A.    Subway® Restaurants and the Intellectual Property**

24.     Frederick DeLuca and Dr. Peter Buck opened the first Subway® restaurant in 1967. DAL began franchising in 1976,[1] and since then Subway® has grown into one of the largest restaurant chains in the world, with approximately 37,000 locations across 110 countries. The company has long marketed itself as providing a healthier alternative to traditional fast food. Through significant investment in the brand over the last fifty years by DAL, SIP, and authorized Subway® franchisees, Subway® has become one of the world's most recognizable quick service restaurant brands.

25.     Subway® restaurants operate under a franchise model. Plaintiff DAL, the Subway® franchisor in the United States, enters into franchise agreements with entrepreneurs around the country who wish to operate a Subway® franchise. These franchise agreements remain in effect for a set term.

---

[1] Before October 29, 2018, Doctor's Associates Inc. ("DAI"), a Florida corporation with its principal place of business in Connecticut, was the U.S. franchisor of Subway® restaurants. On that day, DAI converted itself to DAL, a Florida limited liability company with its principal place of business in Connecticut, and DAL became the name for the U.S. franchisor of Subway® restaurants. By operation of law and as recognized by this Court, DAL assumed the same rights and obligations that DAI formerly had, including rights under franchise agreements signed by DAI. *See Doctor's Assocs. LLC v. Sharma*, No. 3:19-cv-00077(JCH), Doc. No. 24 at 9 (D. Conn. Mar. 21, 2019) ("DAL and DAI are treated as the same entity or the purposes of enforcing any contracts made with DAI prior to its conversion to DAL."). For clarity, the Complaint will use "DAL" to refer to DAL and its predecessor DAI.

26.     Under these franchise agreements, franchisees obtain the right to use the Subway®
System, including the intellectual property relating to the Subway® brand, for the purpose of
operating a Subway® restaurant.

27.     Plaintiff SIP is the owner of many of the intellectual property rights associated with
the Subway® System. These rights include the standard character mark Subway®, which is
registered in the United States Patent and Trademark Office (USPTO) on the Principal Register
under Reg. Nos. 1,174,608; 1,307,341; and 5,601,308 amongst others; and the SUBWAY® logos,
which are registered in the USPTO on the Principal Registrar under Reg. Nos., 2,504,512;
3,774,480; 3,869,196; 5,217,185; 5,358,207; 5,358,208; 5,373,029; and 5,616,727, amongst
others. Other pertinent marks include the Subway® "S" logo registered in the USPTO on the
Principal Registrar under Reg. No.; 5,532,005; 5,703,803; and 5,601,307. SIP also owns various
service marks, including but not limited to: CHOOSE YOUR CANVAS (Reg. No. 5,519,719);
COLOR IT WITH FLAVOR (Reg. No. 5,519,720); and OUR INGREDIENTS. YOUR
MASTERPEICE. (Reg. No. 5,519,721). (SIP's trademarks are hereinafter collectively referred to
as the "Subway® Marks".)

28.     The Subway® Marks' registrations are in full force and effect, unrevoked, and
uncancelled, and most have been deemed to be incontestable pursuant to 15 U.S.C. § 1065.

29.     SIP has given notice to the public of the registration of its trademarks and service
marks as provided in 15 U.S.C. § 1111.

30.     The Subway® Marks that feature the word Subway® are indisputably famous
trademarks in the United States.

31.     Additionally, SIP and/or DAL own the rights to various trade dress and copyrights
associated with Subway® restaurants. The copyrights include but are not limited to: the Subway®

Meatball Saturn (Reg. No. VA0002184279); the Subway® Jalapeno Ballerina (Reg. No. VA0002184274); the Subway® Cheese Book (Reg. No. VA0002184285); and the Subway® Swiss Army (Reg. No. VA0002184436).

32.     SIP owns the confidential systems, recipes, and methods for operating a Subway® restaurant—all of which are part of the Subway® System.

**B.     The Franchise Agreement for Subway® Restaurant #62918**

33.     On April 18, 2014, Defendants entered into a Franchise Agreement together with a Franchise Agreement Addendum (as stated above, both documents are referred to herein collectively as the "Franchise Agreement,"). The Franchise Agreement permitted Defendants to operate a Subway® restaurant to be located within a certain territory, which was subsequently located at 6313 18th Avenue, Brooklyn, NY 11204 ("Restaurant #62918").

34.     The Franchise Agreement states that DAL "own[s] a proprietary system for establishing and operating restaurants featuring sandwiches, pizza and salads under our trade name and service mark SUBWAY® (the '[Subway®] System'). . . . . The [Subway®] System includes the trademark SUBWAY®, other trademarks, trade names, service marks, commercial announcements (slogans) and related insignia (logos) we own (the '[Subway®] Marks')." Franchise Agreement at Recitals, ¶ A.

35.     The Franchise Agreement further explains that the Subway® System also includes confidential information and goodwill. *Id.*; *see also id.* at ¶ 5(n) (setting forth that the Subway® System includes all of the confidential information related to operating a Subway® — i.e., products, food preparation procedures, creative materials, etc.). DAL and SIP do not share the recipes for preparing Subway® food products with the public. Instead, the food products served at Subway® restaurants are supplied only by authorized vendors who are only allowed to sell the

products to authorized franchisees. It is a violation of all Subway® franchise agreements for a franchisee to supply a non-Subway® franchisee with Subway®-approved products.

36.     The Franchise Agreement licensed to Defendants the right to use the Subway® System and the Subway® Marks in connection with the operation of their Subway® restaurant. *Id.* at ¶¶ 3(b)-(c).

37.     In the Franchise Agreement, Defendants agreed to pay "weekly" royalties to DAL in an "amount equal to eight percent (8%) of the gross sales from the Restaurant." Gross sales were defined as "all sales or revenues, including catering and delivery, from [the] business exclusive of sales or use tax, goods and services tax, gross receipts tax, excise tax or other similar tax." *Id.* at ¶ 2.

38.     In addition, Defendants agreed to pay DAL "four and one-half percent (4 ½%) of gross sales of the Restaurant on a weekly basis" to be placed into the Subway Franchisee Advertising Fund Trust for the benefit of all franchisees. *Id.* at ¶ 5(i).

39.     Defendants agreed to "make prompt payment" of all "charges" owed to DAL and "the landlord of the premises . . . in addition to Royalty and advertising contributions, and pay all Sales Tax, other taxes, and debts of the Restaurant . . . as they become due." *Id.* at ¶ 5(k).

40.     In the Franchise Agreement, Defendants agreed to operate Restaurant #62918 in accordance with the Subway® Operations Manual, "which contains mandatory and suggested specifications, standards and operating procedures and may be updated as a result of experience or changes in the law or marketplace." *Id.* at ¶ 5(b)(ii).

41.     Defendants also agreed to "adhere to quality control standards in the Operations Manual or elsewhere with respect to the character or quality of the products [they] sell or the

services [they] perform in association with the Marks." *Id.* Defendants further agreed "not [to] conduct any business or sell any products at the Restaurant that [DAL] ha[s] not approved." *Id.*

42.     The Subway® Operations Manual contains detailed operational, food quality and safety, and other requirements. Among other things, the Operations Manual provides for monthly, unannounced store evaluations by a business developer ("BD") and/or field representative to ensure compliance with Subway® system policies and procedures. These evaluations are known as Restaurant Excellence Visits ("REVs").

43.     Specifically, Chapter 14 of the Operations Manual requires franchisees to allow BDs and/or field representatives to access all areas of their restaurants, take photographs, videotape, make photocopies of records, and interview team members and guests.

44.     DAL has partnered with Steritech, a third-party vendor, to perform REVs in New York City and other locations.

45.     Section 8 of the Franchise Agreement details the post-termination obligations of Defendants. Defendants agreed, among other things, to:

- "change the appearance of the Restaurant . . . so it will no longer be identified as a SUBWAY® Restaurant";

- "stop using the System, including the Marks, signs, colors, structures, POS system software developed for SUBWAY® restaurants, printed goods and forms of advertising indicative of a SUBWAY® business";

- "return all copies . . . of the Operations Manual";

- "cancel any permits, licenses, registrations, certifications or other consents required for leasing, constructing, or operating the Restaurant";

9

- "not have any direct or indirect Association with a Competitive Business located within three (3) miles of any location where a SUBWAY® restaurant operates or operated in the prior year for three (3) years after the termination, expiration or transfer of this Agreement in accordance with the definitions in Subparagraph 5.d.";

- not "disclose to any unauthorized person or entity, or use for the benefit of any unauthorized person or entity, any Confidential Information"; and

- "not to use any Communication Methods [('telephone listings, telephone numbers, internet addresses, domain names and Social Media accounts used by the public to communicate with the Restaurant')] after the termination . . . of [the] Agreement."

Franchise Agreement at ¶¶ 8(e), (g), (h), (i).

46.     Pursuant to Section 5(d) of the Franchise Agreement, "Competitive Business" means "any business any business that sells any type of sandwiches on any type of bread, including but not limited to sub rolls and other bread rolls, sliced bread, pita bread, flat bread, croissants, english muffins and bagels." "Association with a Competitive Business" means:

> 1) having any ownership interest in or serving as director, officer, employee or other representative of a Competitive Business; or 2) advising, on a fee or no fee basis, any individual or entity engaging in a Competitive Business in a manner which imparts your knowledge of the SUBWAY® franchise system; or 3) loaning or otherwise providing money, inventory, equipment or supplies to any individual or entity operating a Competitive Business.

*Id.* at ¶ 5(d).

**C.     Notice of Default/Termination of the Franchise Agreement**

47.     Pursuant to the Franchise Agreement, DAL may terminate the Franchise Agreement at its option upon ten days' notice for certain defaults, and if those default remain uncured for 10 days. One of the specified defaults is the failure to pay all amounts due to DAL for

royalties or advertising fees or the failure to timely pay rent to the landlord for the Restaurant's location. *Id.* at ¶ 8(a).

48.     Further, DAL may terminate the Franchise Agreement at its option and without prejudice after giving Defendants 90 days' written notice of any other default for failure to comply with their duties under the Franchise Agreement or the Operations Manual. *Id.* at ¶ 8(b). However, if Defendants "cure the default within sixty (60) days, the notice will be void." *Id.*

49.     On August 4, 2022, DAL issued Defendants a Notice of Default of the Franchise Agreement because Defendants failed to make prompt payment of their rent and related charges to their landlord, resulting in an outstanding balance due of $10,280.26, in violation of Subparagraph 5(k) of the Franchise Agreement. Pursuant to the terms of the Franchise Agreement, Defendants were provided with 10 days to cure this default. This Notice of Default was sent via UPS and received by Defendants on August 5, 2022.

50.     Defendants did not cure this default within 10 days of their receipt of the Notice of Default.

51.     On August 5, 2022, DAL also issued Defendants a Notice of Default of the Franchise Agreement because they failed to make timely payment of royalty and advertising fees to DAL, with a total amount due of $6,414.46, in violation of Paragraph 2 and Subparagraphs 5(i) and 5(k) of the Franchise Agreement. Pursuant to the terms of the Franchise Agreement, Defendants were provided with 10 days to cure this default. This Notice of Default was sent via UPS and received by Defendants on August 8, 2022.

52.     Defendants did not cure this default within 10 days of their receipt of the Notice of Default.

53.     Also on August 5, 2022, DAL issued Defendants a Notice of Default of the Franchise Agreement because a Steritech representative was refused entry to Restaurant #62918 to conduct REVs on July 1, 2022 and August 2, 2022, respectively, in violation of Subparagraph 5(b)(ii) of the Franchise Agreement and Chapter 14 of the Operations Manual. Pursuant to the terms of the Franchise Agreement, Defendants were provided with 60 days to cure this default. This Notice of Default was sent via UPS and received by Defendants on August 8, 2022.

54.     Defendants did not cure this default within 60 days of their receipt of the Notice of Default.

55.     In light of Defendants' failure to cure multiple defaults of the Franchise Agreement, all of which go to the core of the franchisor-franchisee relationship, on November 11, 2022, DAL issued Defendants a Notice of Termination of the Franchise Agreement because, as of that date, the time period to cure the defaults referred to in the Notice of Default dated August 5, 2022 and two Notices of Default dated August 8, 2022 had passed and Defendants continued to refuse inspections of Subway® Restaurant #62918, continued to refuse to pay royalties and ad fees, and continue to fail to make rent payments. The Notice of Termination was sent via UPS and received by Defendants on November 14, 2022.

56.     The Notice of Termination expressly provided:

**Within one (1) week of receipt of this Notice, you must close and dis-identify your restaurant and comply with any other post termination obligations of your Franchise Agreement. Please refer to the termination provisions of your Franchise Agreement, including Paragraph 8.e through 8.i, for specific obligations you must fulfill upon termination. The failure to close and dis-identify your restaurant and comply with all other post termination provisions in the Franchise Agreement within the time period set forth in this paragraph will result in DAL taking legal action against you.**

**D.    Defendants' Continued Use of The Subway® System**

57.    Notwithstanding DAL's termination, Defendants continued—and continue to this day—to operate the sandwich shop at 6313 18th Avenue, Brooklyn, NY 11204.

58.    On November 22, 2022, a representative of Plaintiffs visited Restaurant #62918. Virtually everything about the location creates the impression for the general public that this is still a Subway® restaurant. For example, the exterior Subway® signage—with the distinctive Subway® logo—remains in place in multiple locations, clearly visible to anyone who stops at the address or just passes by. Indeed, the front door entrance contains Subway® signage and a large, lit sign containing the Subway® logo "S" on the back wall of the restaurant is visible from the street.





59.     Inside the restaurant, the distinctive Subway® signage (including the logo and familiar color scheme) also is visible. Visual works that are substantially similar, if not identical, to the Meatball Saturn, the Subway® Jalapeno Ballerina, the Subway® Cheese Book, and the Subway® Swiss Army, the subject of the aforementioned copyrights, are currently on public display. Upon information and belief, the receipts Defendants and their employees are giving to customers have the Subway® logo printed on them. The structures, packaging, and food service areas are unchanged, further creating the impression that the location is still a Subway® restaurant. The menu board contains Subway®-approved products.











60.    Defendants are using Subway®-approved containers (i.e., to hold deli meat, vegetables, and dressings) and it appears that they are selling Subway®-approved products in substantial part. DAL, however, has instructed all DAL-approved vendors to stop selling Defendants' Subway®-approved food. Defendants' sale of Subway® approved product, which only Subway® franchisees may use, violates the Franchise Agreement and further leads to further confusion for consumers and damage to the Subway® brand.

61.     Defendants are also advertising and selling products that have not been approved by Subway®, including certain breakfast sandwiches, which breaches the Franchise Agreement and, insofar as the food being sold is not subject to DAL's quality control standards and is being mistakenly attributed to a Subway® restaurant, damages the Subway® brand.



62.     Defendants are not currently paying anything to use the Subway® Marks. Defendants are not paying DAL monies owed under the Franchise Agreement. Nor are they paying the $250 per day required by the Franchise Agreement if there is unauthorized continued use of the Subway® Marks. *See* Franchise Agreement at ¶ 8.e.

63.     By their unauthorized use of the Subway® System and the Subway® Marks, as well as by appropriating Plaintiffs' various trade names, service marks, signs, colors, structures, printed goods, forms of advertising, and selling Subway® approved food product without permission, Defendants continue to falsely represent to the public that they are operating a Subway® franchise.

64.     Upon information and belief, nothing has changed regarding Restaurant #62918's appearance or operations since November 22, 2022.

## COUNT ONE: VIOLATION OF THE LANHAM ACT
### (MONETARY DAMAGES AND INJUNCTIVE RELIEF)

65. Plaintiffs DAL and SIP restate and reallege the allegations set forth in Paragraphs 1 through 64 above, as if fully set forth herein.

66. Defendants have used and continue to use the Subway® Marks in interstate commerce in connection with their operation of the restaurant.

67. Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public as to Defendants' affiliation with Subway®.

68. Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public by causing them to think that the restaurant is a Subway® franchise.

69. Defendants' unauthorized use of the Subway® Marks is also willful. Defendants are aware of their obligation to cease use of the Subway® Marks due to the termination of their Franchise Agreement.

70. Defendants have profited from their unauthorized use of the Subway® Marks, in that customers have patronized their restaurant believing that they are eating at a Subway® restaurant when, in fact, Defendants have no authority whatsoever to operate a Subway® restaurant.

71. DAL and SIP are likely to suffer substantial injury and damages from Defendants' unauthorized use of the Subway® Marks, including irreparable harm to the goodwill and reputation of the Subway® Marks and Subway® franchise system. Defendants' unauthorized use also risks irreparable harm to thousands of authorized Subway® franchisees throughout the country.

72. Defendants are, therefore, liable to Plaintiffs for violating the Lanham Act, including Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. SIP also seeks to

recover damages, Defendants' profits, treble damages, and the costs of this action, as provided for under 15 U.S.C. § 1117(a).

73.     Without an injunction ordering Defendants to cease to use or display any of the Subway® Marks, or any other Subway® logos, symbols, or trade dress, DAL and SIP will continue to suffer irreparable harm and damage to their business. This irreparable harm will also be felt by authorized Subway® franchisees, whose businesses are damaged if the Subway® marks and other intellectual property are not adequately protected. Further, the Lanham Act contains a rebuttable presumption that DAL and SIP are suffering irreparable harm due to Defendants' conduct.

74.     Therefore, DAL and SIP also seek injunctive relief under the Lanham Act, including 15 U.S.C. § 1116(a), against Defendants' wrongful, misleading, and willful misuse of the Subway® Marks.

## COUNT TWO: VIOLATION OF THE COPYRIGHT ACT

75.     Plaintiffs DAL and SIP restate and reallege the allegations set forth in Paragraphs 1 through 74 above, as if fully set forth herein.

76.     The Subway® Meatball Saturn (Reg. No. VA0002184279), the Subway® Jalapeno Ballerina (Reg. No. VA0002184274), the Subway® Cheese Book (Reg. No. VA0002184285), and the Subway® Swiss Army (Reg. No. VA0002184436) are original works of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*.

77.     SIP is the exclusive owner of the aforementioned copyrights, and it licenses them to DAL as part of the Subway® System.

78.     Visual works that are substantially similar, if not identical, to the Subway® Meatball Saturn, the Subway® Jalapeno Ballerina, the Subway® Cheese Book, and the Subway® Swiss

Army, the subject of the aforementioned copyrights, are currently on public display in Defendants' restaurant.

79.     Defendant is displaying to the public, without license, authority, or consent from Plaintiffs, these visual works, thereby infringing upon Plaintiffs' exclusive copyright in violation of 17 U.S.C. §§ 106 and 501.

80.     Defendants' infringement of Plaintiffs' rights under copyright is knowing and willful, has caused damages to Plaintiffs, and has enabled Defendants to profit therefrom.

81.     Plaintiffs seek injunctive relief under the Copyright Act, as Defendants' conduct has caused and will continue to cause irreparable harm to Plaintiffs unless enjoined by this Court.

## COUNT THREE: BREACH OF CONTRACT – IDENTIFICATION AS A SUBWAY® RESTAURANT AND USE OF THE SUBWAY® SYSTEM (INJUNCTIVE RELIEF AND MONETARY DAMAGES)

82.     Plaintiff DAL restates and realleges the allegations set forth in Paragraphs 1 through 81 above, as if fully set forth herein.

83.     Pursuant to the Notice of Termination issued November 11, 2022, the Franchise Agreement has been terminated.

84.     DAL formally notified Defendants, in the Notice of Termination, that they must close their restaurant. Specifically, the Franchise Agreement provides:

> Upon termination or expiration of this Agreement, all of your rights under this Agreement will terminate. You must change the appearance of the Restaurant, unless we instruct you otherwise, so it will no longer be identified as a SUBWAY® restaurant. You must stop using the [Subway®] System, including the Marks, signs, colors, structures, POS system software developed for SUBWAY® restaurants, printed goods and forms of advertising indicative of a SUBWAY® business and return all copies you have of the Operations Manual to us. . . . If you breach this provision, you will pay us $250 per day for each day you are in default, as a reasonable pre-estimate of the damages.

Franchise Agreement at ¶ 8(e).

85.     Defendants were told that they had to discontinue use of the Subway® system and Marks, and to otherwise deidentify their restaurant by November 18, 2022.

86.     To date, Defendants have failed to deidentify their restaurant.

87.     Accordingly, DAL is entitled by contract to recover from Defendants $250 per day from November 18, 2022 until they cease utilizing the Subway® System and the Subway® Marks.

88.     Moreover, Defendants' continued use of the Subway® System and the Subway® Marks causes DAL irreparable harm because such use damages the Subway® brand, and by extension, the Subway® franchise system. If Defendants are allowed to continue operating using the Subway® System and Subway® Marks without DAL having a right to inspect the restaurant, then it creates a substantial risk of injury to the brand and the franchise system. Thus, DAL and SIP also seek injunctive relief.

## COUNT FOUR: BREACH OF CONTRACT – ASSOCIATION WITH A COMPETITIVE BUSINESS
## (INJUNCTIVE RELIEF AND MONETARY DAMAGES)

89.     Plaintiff DAL restates and realleges the allegations set forth in Paragraphs 1 through 88 above, as if fully set forth herein.

90.     Pursuant to the Notice of Termination issued November 11, 2022, the Franchise Agreement has been terminated.

91.     DAL formally notified Defendants, in the Notice of Termination, that they must close their restaurant. The Franchise Agreement also contains the following post-termination provision:

> You will not have any direct or indirect Association with a Competitive Business located within three (3) miles of any location where a SUBWAY® restaurant operates or operated in the prior year for three (3) years after the termination, expiration or transfer of this Agreement in accordance with the definitions in Subparagraph 5.d. If local law prohibits a post-term covenant not to compete for a duration of three (3) years, then the maximum time period

allowed by local law will be imposed. You agree to pay us $15,000 for each Competitive Business location plus eight percent (8%) of its gross sales during the three (3) year period, or $100,000 (whichever is higher), as being a reasonable pre-estimate of our damages. For each Competitive Business location for which we are unable to verify gross sales in a timely manner, you will pay us $100,000 as a good faith estimate of our damages.

Franchise Agreement at ¶ 8(g).

92.    "Competitive Business" is defined as "any business that sells any type of sandwiches on any type of bread, including but not limited to sub rolls and other bread rolls, sliced bread, pita bread, flat bread, croissants, english muffins and bagels." *Id.* at ¶ 5(d).

93.    "Association with a Competitive Business" means: "1) having any ownership interest in or serving as director, officer, employee or other representative of a Competitive Business; or 2) advising, on a fee or no fee basis, any individual or entity engaging in a Competitive Business in a manner which imparts your knowledge of the SUBWAY® franchise system; or 3) loaning or otherwise providing money, inventory, equipment or supplies to any individual or entity operating a Competitive Business." *Id.*

94.    Defendants were told that they had to discontinue use of the Subway® System and Marks, and to otherwise deidentify their restaurant by November 18, 2022.

95.    To date, Defendants have failed to deidentify their restaurant and are operating a sandwich shop that constitutes a Competitive Business. In doing so, Defendants are utilizing their knowledge of the Subway® franchise system.

96.    Accordingly, DAL is entitled by contract to recover at least $100,000 as a reasonable pre-estimate of its damages.

97.    Moreover, Defendants' continued operation of a Competitive Business in the same location as a former Subway® Restaurant, where Defendants are using knowledge imparted from

the Subway® franchise system, causes DAL irreparable harm because such use damages the Subway® brand. Thus, DAL and SIP also seek injunctive relief.

### COUNT FIVE: COMMON LAW TRADEMARK INFRINGEMENT
### (INJUNCTIVE RELIEF AND MONETARY DAMAGES)

98.     Plaintiffs DAL and SIP restate and reallege the allegations set forth in Paragraphs 1 through 97 above, as if fully set forth herein.

99.     Defendants have used and continue to use the Subway® Marks in interstate commerce in connection with their operation of the restaurant.

100.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public as to Defendants' affiliation with Subway®.

101.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public by causing them to think that the restaurant is a Subway® franchise.

102.    Defendants' unauthorized use of the Subway® Marks is also willful. Defendants are aware of their obligation to cease use of the Subway® Marks due to the termination of their Franchise Agreement.

103.    Defendants have profited from their unauthorized use of the Subway® Marks, in that customers have patronized their restaurant believing that they are eating at a Subway® restaurant when, in fact, Defendants have no authority whatsoever to operate a Subway® restaurant.

104.    DAL and SIP are likely to suffer substantial injury and damages from Defendants' unauthorized use of the Subway® Marks, including irreparable harm to the goodwill and reputation

of the Subway® Marks and Subway® franchise system. Defendants' unauthorized use also risks irreparable harm to thousands of authorized Subway® franchisees throughout the country.

105.    Defendants are, therefore, liable for violating the common law and New York General Business Law § 360-k.

106.    Defendants acted with the intent to cause confusion or mistake or to deceive. Defendants were fully aware of their obligation to cease use of the Subway® Marks due to the termination of the Franchise Agreement, as set forth in the Notice of Termination. Accordingly, Defendants' conduct warrants injunctive relief and an award of profits or damages pursuant to N.Y. Gen. Bus. Law § 360-k(b).

### COUNT SIX: COMMON LAW UNFAIR COMPETITION
### (MONETARY DAMAGES AND INJUNCTIVE RELIEF)

107.    Plaintiffs restate and reallege the allegations set forth in Paragraphs 1 through 106 above, as if fully set forth herein.

108.    Over the course of several decades, the Subway® Marks as well as the various Subway® logos, symbols, copyrights, and trade dress have attained a distinctive and special significance in the public understanding. Indeed, Subway® has become the largest restaurant chain in the world and, by any measure, one of the world's most-recognized restaurant chains.

109.    Defendants have unlawfully appropriated the well-recognized Subway® Marks and service marks, logos, symbols, copyrights, and trade dress.

110.    Defendants' use of the Subway® Marks and service marks, logos, symbols, copyrights, and trade dress causes confusion in the public mind as to the relationship between Defendants' business and Plaintiffs. More specifically, the public is being deceived and misled into believing that Defendants' restaurant is a Subway® franchise, when in fact Defendants'

restaurant is not a Subway® franchise and Defendants have no license or authority to use the Subway® Marks or the brand's logos, symbols, copyrights, and trade dress.

111.    Defendants' use also causes confusion and uncertainty to Plaintiffs and to the entire Subway® system. The entire Subway® system—spanning the globe and encompassing over 37,000 restaurants—depends on the maintenance of the goodwill and reputation of the Subway® Marks. Defendants' unauthorized use causes harm to thousands of authorized Subway® franchisees throughout the country.

112.    DAL and SIP have suffered substantial injury and damages from Defendants' unauthorized use of the Subway® Marks, including harm to the goodwill and reputation of the Subway® Marks and Subway® franchise system.

113.    For these violations of the common law, Plaintiffs seek monetary damages and injunctive relief preventing further unfair competition by Defendants.

## COUNT SEVEN: VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (MONETARY DAMAGES AND INJUNCTIVE RELIEF)

114.    Plaintiffs restate and reallege the allegations set forth in Paragraphs 1 through 113 above, as if fully set forth herein.

115.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public as to Defendants' affiliation with the Subway® system.

116.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public by causing them to think that the restaurant is a Subway® franchise.

117.    By engaging in the aforesaid conduct, Defendants have committed a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), in that

this conduct: offends public policy; is immoral, unethical, oppressive and/or unscrupulous; and/or has caused—and continues to cause—substantial injury to Plaintiffs and Subway® franchisees that could not have reasonably been avoided by Plaintiffs. Such conduct is not outweighed by any countervailing benefit.

118.     Defendants' misrepresentation to consumers that they are operating a Subway® restaurant also violates CUTPA. This misrepresentation was made to consumers, who understandably interpreted the use of the Subway® name, logo, trademarks, trade dress, and other elements of the Subway® System to mean Defendants are operating a Subway® restaurant. This misrepresentation was material to consumers' decision to patronize Defendants' restaurant.

119.     Because of Defendants' actions, Plaintiffs have suffered ascertainable losses including monetary damages and damages to the goodwill and reputation of the Subway® brand.

120.     Defendants' conduct was willful, wanton, intentional, and malicious. Defendants were fully aware of their obligation to cease use of the Subway® Marks due to the termination of the Franchise Agreement, as set forth in the Notice of Termination. Accordingly, Defendants' conduct warrants an award of punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

121.     Furthermore, Defendants' continued violation of CUTPA causes Plaintiffs irreparable harm and warrants the issuance of an injunction against further use of unfair and deceptive trade practices.

122.     Upon the commencement of this action, Plaintiffs will send a copy of the complaint to the Attorney General and the Commissioner of Consumer Protection, pursuant to Conn. Gen. Stat. § 42-110g(c).

## COUNT EIGHT: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (MONETARY DAMAGES AND INJUNCTIVE RELIEF)

123.    Plaintiffs restate and reallege the allegations set forth in Paragraphs 1 through 122 above, as if fully set forth herein.

124.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public as to Defendants' affiliation with the Subway® system.

125.    Defendants' unauthorized use of the Subway® Marks is likely to cause confusion, mistake, or deception among consumers, franchisees, and the general public by causing them to think that the restaurant is a Subway® franchise.

126.    Defendants have violated the New York General Business Law, N.Y. Gen. Bus. Law § 349(a), because of their misrepresentation to consumers that they are operating a Subway® restaurant. This misrepresentation was made to consumers, who understandably interpreted the use of the Subway® name, logo, trademarks, trade dress, and other elements of the Subway® System to mean Defendants are operating a Subway® restaurant. This misrepresentation was material to consumers' decision to patronize Defendants' restaurant.

127.    Defendants' conduct has caused—and continues to cause—substantial injury to Plaintiffs and Subway® franchisees that could not have reasonably been avoided by Plaintiffs, and such conduct is not outweighed by any countervailing benefit.

128.    Because of Defendants' actions, Plaintiffs have suffered ascertainable losses including monetary damages and damages to the goodwill and reputation of the Subway® brand.

129.    Defendants' conduct was willful and knowing. Defendants were fully aware of their obligation to cease use of the Subway® Marks due to the termination of the Franchise Agreement, as set forth in the Notice of Termination.

130.     Furthermore, Defendants' continued violation of New York General Business Law causes Plaintiffs irreparable harm and warrants the issuance of an injunction against further use of deceptive trade practices.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs DAL and SIP request the following relief:

a.  An injunction enjoining Defendants, their agents, servants, family members, affiliates, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operates their sandwich business at  6313 18th Avenue, Brooklyn, NY 11104 and the proprietors, incorporators, officers, directors, agents, shareholders, and members of such entities), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation, from using the trade and service mark "Subway®" and any other trade name, trademark, trade dress, service mark, distinctive form, slogan, colors, symbols, structures, printed goods, or devices associated with the Subway® System including all signs, equipment, advertising materials, stationery, forms, food containers, drink containers, receipts, and any other articles which display SIP's trademarks, trade names, or service marks or are otherwise indicative of the Subway® brand;

b.  An injunction enjoining Defendants, their agents, servants, family members, affiliates, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operate their sandwich business at 6313 18th Avenue, Brooklyn, NY 11204 and the proprietors, incorporators, officers, directors, agents shareholders, and members of such entities), either

directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation, from holding themselves out to the public as present or former Subway® franchisees;

c.  An injunction enjoining Defendants, their agents, servants, affiliates, family members, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operate their sandwich business at 6313 18th Avenue, Brooklyn, NY 11204 and the proprietors, incorporators, officers, directors, agents shareholders, and members of such entities), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation, from making use of, or disclosing to any third-party, any element of the Subway® System, including any confidential information, methods, food recipes, products, vendor lists, specifications, food preparation procedures, devices, techniques, plans, marketing and advertising information, and other non-public information learned while Defendants were Subway® franchisees;

d.  An injunction enjoining Defendants, their agents, servants, family members, affiliates, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operates their sandwich business at 6313 18th Avenue, Brooklyn, NY 11204 and the proprietors, incorporators, officers, directors, agents shareholders, and members of such entities), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from purchasing, attempting to purchase, serving, selling, attempting to serve, or attempting to sell any Subway®-approved food,

including food products, bread dough, meats, vegetables, seasonings, sauces, or ingredients to any member of the public;

e.  An injunction ordering Defendants, their agents, servants, family members, affiliates, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operate their sandwich business at that location and the proprietors, incorporators, officers, directors, agents shareholders, and members of such entities), to turn over to DAL all manuals, including the Subway® Confidential Operating Manual, records, files, instructions, correspondence, proprietary software, all materials related to the Defendants' operation of their former Subway® restaurant, and any and all other materials and any other documents (including those in any electronic format) that relate to the operation of their former Subway® restaurant or otherwise embody or reflect any part of the Subway® System or DAL and SIP's trade secrets or confidential and proprietary information;

f.  An injunction enjoining Defendants, their agents, servants, family members, affiliates, employees, and attorneys, and all others in active concert or participation with any of them (including, without limitation, any entity through which Defendants own or operates their sandwich business at 6313 18th Avenue, Brooklyn, NY 11204 and the proprietors, incorporators, officers, directors, agents shareholders, and members of such entities), either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership or corporation, from engaging in or continuing to engage in a Competitive Business, as that term is defined under the Franchise Agreement;

g.  An accounting by Defendants of the profits to which Plaintiffs may be entitled;

h.  Money damages attributable to Defendants' use of the Subway® Marks pursuant to 15 U.S.C. § 1117;

i.  Defendants' profits resulting from violation of the trademark pursuant to 15 U.S.C. § 1117;

j.  Treble damages under 15 U.S.C. § 1117(a);

k.  Money damages attributable to Defendants' unfair or deceptive acts or practices that constitute unfair competition and violate CUTPA;

l.  Money damages attributable to Defendants' deceptive acts or practices that constitute unfair competition and violate New York General Business Law;

m.  Attorneys' fees, costs, expert fees and investigative fees incurred in connection with this action as allowed by Conn. Gen. Stat § 42-110g(d), 15 U.S.C. § 1117(a), and any other applicable statutory, contractual, or common law provision;

n.  Treble damages pursuant to  N.Y. Gen. Bus. Law § 349(h) and any other applicable statutory, contractual, or common law provision;

o.  Contractual damages of $250 per day for every day after November 18, 2022 that Defendants have not paid DAL royalties until the date when which Defendants are no longer operating the restaurant and utilizing Subway® System and Subway® Marks; and

p.  Such other relief as this Court deems just and proper.

**PLAINTIFFS**
**DOCTOR'S ASSOCIATES LLC and**
**SUBWAY® IP LLC**

Respectfully submitted,


/s/ John M. Doroghazi
John M. Doroghazi
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 fax
jdoroghazi@wiggin.com

437 Madison Avenue, 35th FL
New York, NY 10022
(212) 551-2600
(212) 551-2888 fax

*Plaintiffs' Attorney*

5063\457\4890-9685-3568.v4